Argued and submitted May 11, affirmed August 1, reconsideration denied
November 28, 1990, petition for review denied January 3, 1991 (311 Or 60)

Robert G. WENGER
and Shirley E. Wenger,
*Respondents,*

*v.*

OREGON UROLOGY CLINIC, P.C.,
and David R. Rosencrantz, M.D.,
*Appellants,*

(A8709-05571; CA A60129)

796 P2d 376

John R. Faust, Jr., Portland, argued the cause for appellants. On the briefs were Ridgway K. Foley, Jr., P.C., Mark H. Wagner, M. Elizabeth Duncan and Schwabe, Williamson & Wyatt, Portland.

J. P. Graff, Portland, argued the cause for respondents. With him on the brief were Graff & O'Neil and Garry L. Kahn, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendants appeal the judgment for plaintiff on a medical malpractice claim. They argue that two of the five counts of negligence submitted to the jury were not supported by evidence in the record. We disagree and affirm.

Plaintiff Robert Wenger[1] was diagnosed as having Peyronie's disease, a male genital condition that can impair sexual function by producing inelastic scar tissue on the elastic sheath that lines the cylinders of the penis, causing impotency or curvature of the penis during erection. In 1986, after more conservative treatment proved unsuccessful, plaintiff elected to have surgery. The surgical procedure, performed by defendant Rosencrantz, involved inserting an inflatable penile prosthesis and making cuts in the scar tissue. Gangrene developed in the penis tissue, and, after two more operations, the penis was almost completely amputated.

Plaintiff and his wife, Shirley, brought this action against defendants, alleging five specifications of negligence. A general verdict form was used, and the jury found for plaintiffs.

Defendants assign as error the court's denial of their motion to remove two of plaintiffs' allegations of negligence from the jury. If more than one specification of negligence is submitted to the jury, and one or more specification is not supported by the evidence and it cannot be determined on which the jury based its verdict, a new trial must be granted. *Whinston v. Kaiser Foundation Hospital,* 309 Or 350, 788 P2d 428 (1990). Because a general verdict form was used in this case, there must be evidence in the record for each allegation to support a jury finding.

Defendants argue that there was no support for two specifications dealing with "informed consent": first, that defendants failed to advise plaintiff of alternative forms of treatment and, second, that defendants failed to inform plaintiff of the risks and dangers of the surgery. Oregon's

---

[1] The Wengers are both plaintiffs. The jury awarded both parties damages. For simplicity, Robert will be referred to as plaintiff, and his wife will be referred to as Shirley.

"informed consent" statute, ORS 677.097,[2] provides that, in order to obtain the "informed consent" of a patient, a physician must generally explain the procedure or treatment to be undertaken and must tell the patient that there may be alternative procedures and that there are risks. After giving a general explanation, the physician must ask if the patient wants a more detailed explanation. If so, "the physician * * * shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient." ORS 677.097(2). The parties agree that plaintiff asked for a detailed explanation. The parties disagree as to whether there was any evidence that defendants omitted any information that could make them liable.

Defendants first argue that the court erred in allowing the jury to consider the specification based on failure to explain all of the material risks. They argue that plaintiff's injury was caused by gangrene, which is not a material risk of the procedure that was performed, and that there was no evidence that plaintiff's injury was caused by a material risk. In *Arena v. Gingrich,* 305 Or 1, 4, 748 P2d 547 (1988), the Supreme Court discussed the standard for proving liability for an injury when the risks of a medical procedure are not fully explained:

"When liability for physical injuries is premised on a failure to obtain a patient's consent in the manner prescribed by ORS 677.097, a patient's claim may be that she did not consent at all, or that she consented only because she was not fully informed. The injury must have resulted from the wrongful conduct. The failure properly to obtain the patient's consent 'causes' the alleged harm if after a proper explanation the

---

[2] ORS 677.097 provides, in pertinent part:

"(1) In order to obtain the informed consent of a patient, a physician * * * shall explain the following:

"(a) In general terms the procedure or treatment to be undertaken;

"(b) That there may be alternative procedures or methods of treatment, if any; and

"(c) That there are risks, if any, to the procedure or treatment.

"(2) After giving the explanation specified in subsection (1) of this section, the physician * * * shall ask the patient if the patient wants a more detailed explanation. If the patient requests further explanation, the physician * * * shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient."

patient would not have consented to the procedure (unless, of course, the harm would have occurred without the procedure)."

There was evidence that defendants did not discuss the risk of infection with plaintiff and did not give plaintiff any details about the failure rate of the prosthesis. There was expert testimony that the risk of infection and the failure rate of the prosthesis were both material risks. Plaintiff testified that he would not have consented to the surgery if he had known of all of the material risks, including the failure rate. There was enough evidence for the jury to find that defendants failed to inform plaintiff fully about the material risks of the procedure and that plaintiff would not have consented to the procedure had he been fully informed.

Defendants next argue that the court erred in allowing the jury to consider the alleged failure to inform plaintiff of viable alternative procedures, arguing that there was no evidence that any viable alternatives were omitted during Rosencrantz's discussions with plaintiff. Plaintiff had two meetings with Rosencrantz before his surgery; the second included Shirley. Rosencrantz discussed using a prosthesis at the first meeting. Plaintiff testified about a disagreement that he had had with Rosencrantz at the second meeting. According to plaintiff's testimony, after he mentioned that, at the first meeting, Rosencrantz had described making cuts without a prosthesis, Rosencrantz disagreed and told plaintiff that the procedure required a prosthesis. Plaintiff testified that, after that discussion, he assumed that he had misunderstood that it was possible to make cuts without a prosthesis, and he believed that Rosencrantz was going to insert the prosthesis without cuts.

Rosencrantz testified that, although he did not remember the specific discussion with plaintiff, he usually describes other procedures, although he does not refer to them by name. On the day of surgery, a month after the second meeting with plaintiff, Rosencrantz dictated an entry in the hospital records that he stated that he had discussed the "alternatives, risks and hazards of different penile prostheses" and the alternatives of putting in the prosthesis alone or incising the tissue and grafting polypropyline-type velour.

At trial, medical experts described four alternative

surgical procedures used for correcting Peyronie's disease. The Horton-Devine procedure consists of removing the scar tissue and replacing it with a graft of skin or synthetic material and is generally not used with a penile prosthesis. The Nesbit procedure consists of removing a small triangular wedge of tissue on the outer surface of the curve and closing the open area with a tuck, without a prosthesis. The Malloy technique, used in this case, consists of implanting an inflatable prosthesis and then, if necessary, cutting diamond-shaped incisions in the scar tissue on the undersurface of the curve. Implanting a prosthesis without cutting is the fourth technique. There was expert testimony that the standard of care in the practice of urology requires all the viable alternatives to be discussed with a patient before penile implant surgery.

■ In addition, at least one of the medical experts gave evidence that the Nesbit procedure was a viable alternative for plaintiff, stating that he had done that procedure without a prosthesis on patients like plaintiff. Rosencrantz's own notes included a statement that grafting was a viable alternative for plaintiff. If the jury believed plaintiff's testimony that Rosencrantz did not discuss the alternatives of making cuts without a prosthesis or using grafting, then it could have believed that he did not discuss all of the viable alternatives with plaintiff. There was no error in submitting the allegations of negligence to the jury.

Affirmed.